# EXHIBIT A

## AGREEMENT

### (Pursuant to Agreement dated June 17, 2010 among Donavan Poulin, Paul Jonjak, XBO, LLC, ThinkVillage-Kiwi, LLC and Kiwi International)

This AGREEMENT (this "**Agreement**") is entered into as of July ___, 2010 by and among DONAVAN POULIN ("**Poulin**"), PAUL JONJAK ("**Jonjak**"), XBO, LLC, a Colorado limited liability company ("**XBO**"), THINKVILLAGE-KIWI, LLC, a Colorado limited liability company ("**TVK**"), and KIWI INTERNATIONAL, a United Kingdom limited corporation ("**Kiwi**"). Poulin, Jonjak, XBO, TVK and Kiwi are individually referred to herein as a "**Party**," and collectively as the "**Parties**."

WHEREAS, on July 9, 2008, XBO, Jonjak and Poulin entered into the Amended and Restated Operating Agreement of TVK (the "**TVK Operating Agreement**");

WHEREAS, TVK owns all of the assets set forth on **Schedule 1** attached hereto (the "**TVK Assets**");

WHEREAS, on June 17, 2010 (the "**Poulin-TVK Agreement Effective Date**"), the Parties entered into an Agreement (the "**Poulin-TVK Agreement**") pursuant to which Poulin and Kiwi agreed, among other things, to execute a document granting a release and covenant not to sue to Adobe Systems Inc. and Adobe Macromedia Software LLC ("Adobe") in connection with TVK's settlement of a lawsuit against Adobe, styled *ThinkVillage-Kiwi, llc v. Adobe Systems Inc. and Adobe Macromedia Software LLC*, Case No. CV 08 4166 SI (N.D. Cal);

WHEREAS, on June 18, 2010, Poulin and Kiwi executed a "Rider to Patent License and Settlement Agreement Between ThinkVillage-Kiwi, LLC, Adobe Systems Incorporated and Adobe Macromedia Software LLC" which granted a release and covenant not to sue Adobe as required by the Poulin-TVK Agreement; and

WHEREAS, as required by the Poulin-TVK Agreement, the Parties desire to enter into this Agreement pursuant to which (i) Poulin will receive the Payment (as defined below) in consideration for the assignment of the Poulin Units (as defined below) to TVK in redemption of all such units, and (ii) TVK, XBO and Jonjak will grant Poulin the Option (as defined below), all in accordance with the terms and conditions set forth herein.

NOW, **THEREFORE**, for good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.  Redemption of Poulin Interest.  TVK shall redeem from Poulin, and Poulin shall sell, transfer and assign to TVK, free and clear of all liens and encumbrances, 980 Class A Units (as such term is defined in the TVK Operating Agreement) in TVK (the "**Poulin Units**"), which represent 49% of the limited liability company interests in TVK and all of the limited liability company interests in TVK owned by Poulin, for the Payment.  In order to evidence the sale, transfer and assignment of the Poulin Units to TVK, Poulin and TVK shall execute on the date hereof the Assignment and Assumption of LLC Units attached hereto as **Exhibit A**.  Poulin acknowledges and agrees that, after the assignment of the Poulin Units to TVK in accordance with the terms set forth herein, Poulin shall retain no rights whatsoever in TVK (other than the Option), including, without limitation, any rights to any of the TVK Assets or any distribution of Distributable Cash (as such term is defined in the TVK Operating Agreement).

2. <u>Consideration</u>. In consideration of the agreements contained herein, including, without limitation, the assignment of the Poulin Units, the release by the Poulin Parties (as defined below) described in Section 5 and the indemnification obligations set forth in Section 7, TVK shall, within five (5) business days after the date hereof, pay to Poulin an amount (the "**Payment**") equal to $1,000,000, less (i) all amounts which tax counsel for TVK determines in his or her reasonable judgment must be withheld and paid to federal, state and local taxing authorities in accordance with applicable tax laws, (ii) $200,000 (the "**Holdback Amount**"), (iii) $23,000 (the "**Prepayment Amount**"), and (iv) $10,000 (the "**Loan Amount**"). The Parties acknowledge and agree that (i) the Holdback Amount shall be available, subject to the provisions hereof, as a nonexclusive means to fulfill the Poulin Parties' indemnification obligations pursuant to Section 7 and the Holdback Amount shall be released to Sellers pursuant to Section 3, (ii) the Prepayment Amount shall be used to reimburse in full TVK for the monthly payments pre-paid to Poulin for services not yet rendered to TVK under the TVK Operating Agreement, and (iii) the Loan Amount shall be used to repay in full the personal loan made by XBO to Poulin.

3. <u>Release of Holdback Amount</u>. On the first business day following the six month anniversary of the date hereof (the "**Holdback Release Date**"), TVK shall deliver to Poulin the Holdback Amount less (i) any amounts previously distributed to the TVK Parties pursuant to Section 7, and (ii) any amount reserved by TVK pursuant to this Section 3. To the extent that, as of the Holdback Release Date, (i) any TVK Party has notified the Poulin Parties of an indemnification claim pursuant to Section 7 (each, an "**Indemnification Obligation**"), and (ii) a final determination of such Indemnification Obligation has not been made, then such amount of the Holdback Amount equal to TVK's reasonable estimate of the amount of the Indemnification Obligation payable by the Poulin Parties shall continue to be held by TVK until a final determination with respect to such Indemnification Obligation is made. Upon a final determination of such Indemnification Obligation, such withheld amount that shall not be used to satisfy such Indemnification Obligations, if any, shall be promptly released to Poulin. If TVK elects to exercise its rights set forth in this Section 3, it shall give the Poulin Parties written notice of such election (the "**Holdback Retention Notice**"), which Holdback Retention Notice shall set forth the amount of the Holdback Amount being retained by TVK.

4. <u>Option</u>. In addition to the Payment, in consideration of the agreements contained herein, TVK, XBO and Jonjak hereby grant to Poulin a personal non-transferable option (the "**Option**") to purchase from XBO, free and clear of all liens and encumbrances, all (but not less than all) of the TVK Units (as defined below) for $1,000,000 within one hundred twenty (120) days after the Poulin-TVK Agreement Effective Date (the "**Option Deadline**"). For purposes of this Agreement, "**TVK Units**" means (i) the 980 Class B Units (as defined in the TVK Operating Agreement) that XBO owns in TVK, which represent 49% of the limited liability company interests in TVK, (ii) the 20 Class A Units that Jonjak owns in TVK, which represent 1% of the limited liability company interests in TVK, and (iii) the 20 Class B Units that Jonjak owns in TVK, which represent 1% of the limited liability company interests in TVK. If Poulin elects to exercise the Option, he shall do so by delivering a written notice (the "**Exercise Notice**") at least five (5) business days prior to the Option Deadline to TVK, XBO and Jonjak. The Exercise Notice shall set forth the day on which the closing for the purchase and sale of the TVK Units will occur (the "**TVK Closing Date**"), which may be as early as three (3) business days after the delivery of the Exercise Notice, but in no event shall the TVK Closing Date be more than five (5) business days following the delivery of the Exercise Notice. In order to evidence the sale, transfer and assignment of the TVK Units to Poulin pursuant to the Option, Poulin, TVK, XBO and Jonjak shall execute the Assignment and Assumption of LLC Units attached hereto as <u>Exhibit B</u> on the TVK Closing Date. Poulin acknowledges and agrees that, if Poulin exercises the Option, (i)

prior to the TVK Closing Date, TVK shall change its name to a name, approved by Poulin in his reasonable discretion, which does not contain the name "ThinkVillage," "TVK" or any names or initials similar thereto or variants thereof (and Poulin shall have no right to use any such names or initials following the TVK Closing Date), (ii) any cash and other assets of TVK shall be distributed to the members of TVK prior to the TVK Closing Date with the effect that the only assets of TVK will be the TVK Assets, (ii) the rights set forth on Sections 3.3 and 10.5 of the TVK Operating Agreement shall no longer exist, (iii) Poulin shall have the right to liquidate TVK, but in such event shall be solely responsible for all costs, expenses and liabilities related to such liquidation, including attorneys' fees.   Poulin further acknowledges and agrees that the conveyance of all of the TVK Units to Poulin on the TVK Closing Date shall terminate the tax status of TVK as a partnership for federal income tax purposes and that Poulin shall take no action on or after the TVK Closing Date to reinstate TVK's tax status as a partnership without the advance written consent of Jonjak, who is TVK's "Tax Matters Partner."   Poulin further acknowledges and agrees that Jonjak, in his capacity as Tax Matters Partner, shall have the sole responsibility (i) for preparing and filing any required partnership (or other entity) tax returns for the period ending with the TVK Closing Date, (ii) for representing TVK before any federal, state or local tax authority that audits any return for any period during which TVK was treated as a partnership for tax purposes, including the period ending on the TVK Closing Date, and (ii) for exercising any and all administrative and judicial appeal rights that may exist following any adverse action by any such authority.  Jonjak shall have the right to retain copies of all TVK books and records relating to financial and tax matters for the period of TVK's existence as a partnership for tax purposes.

5.   <u>Release and Waiver by the Poulin Parties</u>.  Except for the rights and obligations set forth herein, Poulin and Kiwi (collectively, the "**Poulin Parties**") hereby fully and finally release and forever discharge Jonjak, XBO and TVK (collectively, the "**TVK Parties**") and their respective officers, directors, employees, predecessors, attorneys, agents, successors, heirs and assigns from any and all claims, debts, liabilities, demands, obligations, injuries, damages, losses, causes of action, costs, expenses of every kind and nature in law, equity or otherwise, whether known or unknown, existing or that may exist as of the date hereof, contingent or fixed, relating to the TVK Operating Agreement and/or the TVK-Poulin Agreement, including attorneys' fees.

6.   <u>Release and Waiver by the TVK Parties</u>.  Except for (i) the rights and obligations set forth herein, including without limitation, the indemnification obligations set forth on Section 7, and (ii) any claims related to any actions taken by Poulin in his capacity as Chief Technical Manager of TVK in bad faith, or constituting fraud, gross negligence or willful misconduct or otherwise not permitted pursuant to the TVK Operating Agreement, the TVK Parties hereby fully and finally release and forever discharge the Poulin Parties and their respective officers, directors, employees, predecessors, attorneys, agents, successors, heirs and assigns from any and all claims, debts, liabilities, demands, obligations, injuries, damages, losses, causes of action, costs, expenses of every kind and nature in law, equity or otherwise, whether known or unknown, existing or that may exist as of the date hereof, contingent or fixed, relating to the TVK Operating Agreement and/or the TVK-Poulin Agreement, including attorneys' fees.

7.   <u>Indemnity</u>.  The Poulin Parties hereby, jointly and severally, indemnify and hold harmless the TVK Parties and their respective officers, directors, employees, predecessors, agents, successors, heirs and assigns from and against any and all liabilities, obligations (including removal and remedial actions), losses, damages (including foreseeable and unforeseeable consequential damages and punitive damages), penalties, actions, judgments, suits, claims, costs, expenses and disbursements (including attorneys' and consultants' fees

and disbursements) of any kind or nature whatsoever that may at any time be actually incurred by, imposed on or asserted against any of them, directly or indirectly, based on, or arising or resulting from the Potential Claims (as defined below) (collectively, the "**Indemnified Matters**"), regardless of when such Indemnified Matters arise.   For purposes of this Agreement, the "**Potential Claims**" means each and every claim of any kind or nature whatsoever, whether known or unknown, that (i) Thomas William Stevenson, Fieldman Hawkes Consulting, DLA Piper or Robert Stump may have against any of the Poulin Parties or any of the TVK Parties related to (a) the TVK Assets or (b) services rendered to any of the Poulin Parties and/or TVK, or (ii) are asserted against the TVK Parties as a result of (a) Poulin liquidating TVK in accordance with Section 4, or (b) Poulin causing TVK to be treated as a partnership for federal income tax purposes on or after the TVK Closing Date. The Poulin Parties agree to reimburse the TVK Parties for all sums paid and costs, including, without limitation, attorneys' fees, incurred by the TVK Parties with respect to any Indemnified Matter within ten (10) days following written demand therefor.

    8.   Confidentiality.    The Parties agree that the terms of this Agreement (the "**Confidential Terms**") shall remain confidential and shall not be disclosed, directly or indirectly, by any Party for any reason at any time; provided, however, that any Party may disclose, in confidence, on a need-to-know basis, the Confidential Terms:    (i) to their attorneys, accountants, financial institutions, directors, officers, employees, subsidiaries, and affiliates as necessary in the course of business; (ii) in any legal proceeding in order to enforce any provision of this Agreement; or (iii) as otherwise required by law or by the consent of all Parties. Before disclosing any Confidential Terms to any court, administrative agency, or governmental agency, or pursuant to any subpoena, the applicable Party will:  (i) provide reasonable notice to the extent reasonably practicable under the circumstances to the other Parties in writing prior to disclosing any Confidential Terms pursuant to a subpoena, court order, or administrative order requiring such disclosure; and (ii) cooperate reasonably with any Party that seeks to quash or dismiss such process or to obtain a protective order or other protective arrangements to protect the confidentiality of this Agreement.

    9.   Governing Law and Forum.   This Agreement shall be construed in accordance with and governed by the laws of the State of Colorado, without giving effect to conflicts of laws principles thereof.    The Parties acknowledge and agree that any litigation, action, or legal proceeding arising out of this Agreement, including, but not limited to, any attempt to enforce or interpret this Agreement, shall be brought in the courts of the State of Colorado located in the City and County of Denver or federal courts located in said State and County.   The Parties hereby consent to, and waive any objection to, jurisdiction and venue of and in such courts.

    10. Waiver of Jury Trial.  TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW WHICH CANNOT BE WAIVED, EACH PARTY TO THIS AGREEMENT HEREBY WAIVES, AND COVENANTS THAT IT WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS AGREEMENT OR THE SUBJECT MATTER HEREOF, WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER SOUNDING IN TORT OR CONTRACT OR OTHERWISE.    ANY OF THE PARTIES HERETO MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION 10 WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF EACH OF THE PARTIES HERETO TO THE WAIVER OF HIS OR ITS RIGHT TO TRIAL BY JURY.

11. <u>Notices</u>.   All notices, requests, claims, demands and other communications hereunder shall be in writing and shall be given or made (and shall be deemed to have been duly given or made upon receipt) by delivery in person, by an internationally recognized overnight courier service, or by confirmed facsimile or confirmed email transmission to the respective Parties at the following addresses (or at such other address for a Party as shall be specified in a notice given in accordance with this <u>Section 11</u>):

If to Poulin:

> 1958 Hidden Lake Place
> Kewlona, British Columbia, VIV 2W8
> Canada
> Fax No.: _____
> Email Address:_____

With a copy to:

> _____
> _____
> _____
> Fax No.: _____
> Email Address:_____

If to Jonjak:

> 10437 Goosehaven Drive
> Lafayette, CO 80026
> Attn.: Paul Jonjak
> Fax No.: _____
> Email Address: pjonjak@yahoo.com

With a copy to:

> Brownstein Hyatt Farber Schreck, LLP
> 410 Seventeenth Street, Suite 2200
> Denver, CO 80202
> Attn:  Peter J. Korneffel, Esq.
> Fax No.: (303) 223-1111
> Email Address: pkorneffel@bhfs.com

If to XBO:

> 10437 Goosehaven Drive
> Lafayette, CO 80026
> Attn.: Paul Jonjak
> Fax No.: _____
> Email Address: pjonjak@yahoo.com

With a copy to:

> Brownstein Hyatt Farber Schreck, LLP

13882\2\1419647.4

5

410 Seventeenth Street, Suite 2200
Denver, CO 80202
Attn:  Peter J. Korneffel, Esq.
Fax No.: (303) 223-1111
Email Address: pkorneffel@bhfs.com

If to TVK:

10437 Goosehaven Drive
Lafayette, CO 80026
Attn.: Paul Jonjak
Fax No.: _____
Email Address: pjonjak@yahoo.com

With a copy to:

Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202
Attn:  Peter J. Korneffel, Esq.
Fax No.: (303) 223-1111
Email Address: pkorneffel@bhfs.com

If to Kiwi:

1958 Hidden Lake Place
Kewlona, British Columbia, VIV 2W8
Canada
Attn:  Donavan Poulin
Fax No.: _____
Email Address:_____

With a copy to:

_____
_____
_____
Fax No.: _____
Email Address:_____

12. <u>Costs and Expenses</u>.  In the event that any suit or action is instituted to enforce any provision in this Agreement, the prevailing Party in such dispute shall be entitled to recover from the losing party all fees, costs and expenses of enforcing any right of such prevailing Party under or with respect to this Agreement, including, without limitation, such reasonable fees and expenses of attorneys and accountants, which shall include, without limitation, all fees, costs and expenses of appeals.

13. <u>Counterparts; Facsimile</u>.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  This Agreement may be executed and delivered by

facsimile or other electronic transmission and execution in such manner shall constitute an original.

14. Severability.  In the event that any provision of this Agreement shall be held to be invalid or unenforceable by a court of competent jurisdiction, such provision shall be reformed and enforced to the maximum extent permitted by law.  If such provision cannot be reformed, it shall be severed from this Agreement and the remaining portions of the Agreement shall be valid and enforceable.

15. Entire Agreement. This Agreement embodies the entire understanding of the Parties with respect to the subject matter hereof, and merges all prior discussions or agreement among them, and none of the Parties shall be bound by any conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof other than as expressly provided herein.  No oral explanation or oral information by any Party hereto shall alter the meaning or interpretation of this Agreement.

16. Successors and Assigns.  This Agreement cannot be assigned by any Party without the express prior written consent of all other Parties.  Except as specifically set forth herein, all covenants and agreements contained herein shall bind and inure to the benefit of the respective heirs, executors, administrators, successors and permitted assigns of the Parties.

17. Amendment.  The provisions of this Agreement may be waived, altered, amended or repealed, in whole or in part, only upon the written consent of all Parties.

18. Section Headings.  The section headings herein are inserted only for convenience and reference and shall in no way define, limit, or prescribe the scope or intent of any provisions of this Agreement.

**[Remainder of Page Intentionally Left Blank]**

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

_____
Donavan Poulin

_____
Paul Jonjak

XBO, LLC

By: _____
Name: _____
Title: _____

ThinkVillage-Kiwi, LLC

By: _____
Name:  Paul Jonjak
Title: Manager

Kiwi International

By: _____
Name: _____
Title: _____

## SCHEDULE 1

### TVK ASSETS

**(i) Provisional Patent Application:** US 60/689,101, filed June 10, 2005
Title: 'myMCOM business model, MCOM STUDIO product layout and executive summary kiwi (keyed-intelligent-wireless-interface) executive summary.'

**Provisional Patent Application:** US 61/152,934, filed February `6, 2009
Title 'System And Method For Emulating And Profiling A Frame Based Application Playing On A Mobile Device'

**(ii) Pending Patent Application:** US 11/449,958, filed June 9, 2006
Title 'System And Method For Emulating And Profiling An Application Playing On A Mobile Device That Includes A Flash Player.'

**Pending Patent Application:** US 12/705,913, filed February 15, 2010
Title  'System And Method For Emulating And Profiling A Frame-Based Application Playing On A Mobile Device.'

**Pending Patent Application:** US 12/759,543, filed April 13, 2010
Title 'System And Methods For Emulating A Mobile Device Application Executing In Real Time '

**(iii) NDA:** All rights associated with the nondisclosure agreement with Macromedia dated 27 January 2005 and any other NDA related to the myMCOM documents.

**(iv) myMCOM documents:** All myMCOM documents.

**(v) Trade Secrets:** All trade secrets associated with the Intellectual Property and any of the assets listed in this "Schedule 1".

**(vi) Pending Trademarks**

      a. myMCOM
      b. MCOM STUDIO
      c. Mobile Hybrid Authoring Environment
      d. Hybrid Studio
      e. Natural Handset Environment
      f. Natural Handset Emulators
      g. CAPOUT
      h. SmartLine CPU Profiler
      i. SmartLine Memory Profiler
      j. SmartLine Graphic 3D FillRate and 3D PolyCount Profiler
      k. SmartLine System Load Profiler

**(vii) URL and subsequent domain names:**

      a. www.mymcom.com
      b. www.mymcom.net
      c. www.mymcom.org
      d. www.mcomstudio.com

       e.   www.mcomstudio.net

       f.    www.mcomstudio.org

**(viii) Retroactive Patent License Agreement, dated June 17, 2010, by and between Poulin and Kiwi, on the one hand, and TVK, on the other hand.**

## EXHIBIT A

POULIN ASSIGNMENT AGREEMENT

See attached.

THIS ASSIGNMENT AND ASSUMPTION OF LLC UNITS (this "**Assignment**") is made effective as of July __, 2010 (the "**Effective Date**") by and between (i) Donavan Poulin ("**Assignor**") and (ii) ThinkVillage-Kiwi, LLC, a Colorado limited liability company ("**Assignee**").

## RECITALS

**WHEREAS**, Assignor and Assignee are parties to an Agreement dated as of the date hereof (the "**Agreement**"), whereby Assignor agreed to assign the Poulin Units (as such term is defined in the Agreement) to Assignee on the Effective Date and the terms of which are incorporated herein by this reference.

## AGREEMENT

**NOW, THEREFORE**, for and in consideration of the mutual promises and covenants herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1.      **Assignment**.   Assignor, pursuant to the Agreement, hereby assigns, transfers, and conveys to Assignee all of Assignor's right, title, power, interest, obligations and responsibilities in, to and under the Poulin Units, including, without limitation, all of Assignor's rights to share in the profits, losses, gains, deductions, credits, cash, assets and all other economic benefits allocable to such Poulin Units accruing after the Effective Date, free and clear of any liens or encumbrances.

2.      **Assumption**.   Assignee, pursuant to the terms of the Agreement, hereby accepts, redeems and assumes, without limitation, all of the right, title, power, interest, obligations and responsibilities in, to and under the Poulin Units as hereby assigned, transferred, and conveyed to Assignee as of the Effective Date.

3.      **Counterparts; Facsimile**.   This Assignment may be executed in several counterparts, each of which shall be deemed to be an original document, and all of which together shall constitute one agreement binding on all parties hereto, notwithstanding that all the parties hereto shall not have signed the same counterpart. This Assignment may be executed by facsimile or other electronic transmission.

4.      **Governing Law**.   This Assignment and the transactions contemplated hereunder shall be governed by and construed in accordance with the laws of the State of Colorado, without giving effect to conflicts of laws principles thereof.

[Remainder of Page Intentionally Left Blank]

IN WITNESS WHEREOF, the parties hereto have caused this Assignment to be executed as of the Effective Date.

**ASSIGNOR:**

_____

Donavan Poulin

**ASSIGNEE:**

THINKVILLAGE-KIWI, LLC

By: _____
Name: _____
Title: _____

## EXHIBIT B

TVK UNITS ASSIGNMENT AGREEMENT

See attached.

THIS ASSIGNMENT AND ASSUMPTION OF LLC UNITS (this "**Assignment**") is made effective as of _____, 2010 (the "**Effective Date**") by and among (i) THINKVILLAGE-KIWI, LLC, a Colorado limited liability company, XBO, LLC, a Colorado limited liability company, and PAUL JONJAK (collectively, "**Assignors**") and (ii) Donavan Poulin ("**Assignee**").

## RECITALS

WHEREAS, Assignors and Assignee are parties to an Agreement dated July ___, 2010 (the "**Agreement**").

WHEREAS, Assignee has exercised his option to purchase from Assignors, free and clear of all liens and encumbrances, all (but not less than all) of the TVK Units (as such term is defined in the Agreement) in accordance with the Agreement, the terms of which are incorporated herein by this reference.

## AGREEMENT

NOW, THEREFORE, for and in consideration of the mutual promises and covenants herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1.      **Assignment**.  Assignors, pursuant to the Agreement, hereby assign, transfer, and convey to Assignee all of Assignors' right, title, power, interest, obligations and responsibilities in, to and under the TVK Units, including, without limitation, all of Assignors' rights to share in the profits, losses, gains, deductions, credits, cash, assets and all other economic benefits allocable to such TVK Units accruing after the Effective Date, free and clear of any liens or encumbrances.

2.      **Assumption**.  Assignee, pursuant to the terms of the Agreement, hereby accepts and assumes, without limitation, all of the right, title, power, interest, obligations and responsibilities in, to and under the TVK Units as hereby assigned, transferred, and conveyed to Assignee as of the Effective Date.

3.      **Counterparts; Facsimile**.  This Assignment may be executed in several counterparts, each of which shall be deemed to be an original document, and all of which together shall constitute one agreement binding on all parties hereto, notwithstanding that all the parties hereto shall not have signed the same counterpart. This Assignment may be executed by facsimile or other electronic transmission.

4.      **Governing Law**.  This Assignment and the transactions contemplated hereunder shall be governed by and construed in accordance with the laws of the State of Colorado, without giving effect to conflicts of laws principles thereof.

[Remainder of Page Intentionally Left Blank]

IN WITNESS WHEREOF, the parties hereto have caused this Assignment to be executed as of the Effective Date.

**ASSIGNORS:**

THINKVILLAGE-KIWI, LLC

By:      _____
Name:  _____
Title:    _____

XBO, LLC

By:      _____
Name:  _____
Title:    _____

_____
Paul Jonjak

**ASSIGNEE:**

_____
Donavan Poulin